May it please the court. My name is Ashley McDonald and I represent Michael Gallegos. If possible, I intend to reserve two minutes of my time for rebuttal. This case is about the Sixth Amendment right to the effective assistance of counsel and particularly the principle of meaningful adversarial testing. Can an attorney consistent with the Sixth Amendment vilify his client,  and then leave his client's fate up to the jury without at least a minimally comprehensible argument on his client's behalf to the jury? In this case, Mr. Gallegos' attorney, Greg Clark, conceded his client's guilt to the jury. So you're focusing principally on the recently certified issues, essentially? Yes. Okay. In this case, Mr. Clark told the jury that Mr. Gallegos had committed the crimes that were in the indictment. He asked the jury to convict, he said... Well, when you say that, did he ask them to convict him of first-degree murder, or did he say, was he arguing for something less? That he was saying there was a homicide, but wasn't he arguing for less than first-degree special circumstance? No, Your Honor. At points he asked them to convict. He said the prosecution will ask you to convict of first-degree murder and sexual conduct with a minor, and I want you to be fair, I want you to convict. But he didn't say that. It seemed to me, here's my summary, and this is what confuses me. It seemed to me that he, with regard to premeditated murder, did put on some reasonable amount of evidence, and he made some argument in closing about voluntary manslaughter and to negate premeditated murder. And, in fact, he did manage to negate premeditated murder with regard to – because some portions of the juries didn't buy the premeditated murder. But what about the felony murder? That's where I get very confused. I don't understand either what you're arguing about the felony murder, what the other side is arguing about felony murder, or what the lawyer was – he seemed to be focusing his defense on the felony murder because he made this huge deal about whether the victim was alive or dead at the time she was raped, but then he didn't seem to go anywhere with it. But you don't seem to go anywhere with it, too. I'm really baffled. I agree. I think it's a very complicated issue. Well, maybe you can walk us through that because that's where I really need help. Well, I think in part it's complicated because of the way that Clark proceeded with this trial. I do think that part of his plan, his ineffective strategy, his hope – Well, it didn't win in the end, but ineffective is different than successful, right? Would you concede that? Yes. Maybe in this you can wrap up. Is there anything in the record that suggests, because I didn't see anything even to this date, that there's an expert opinion as to whether the victim died before or after sexual assault would have been contrary or different from the state's experts. Still to this date, I haven't seen any production of someone that you're even saying right now, looking at the evidence that was there, could say that she was dead. Are you asking me whether – Well, you're saying he was ineffective because he didn't counter the state's expert, who gave some indication that she was alive when some of this was happening. But there's still nothing in the record to say there's anyone out there in the entire world that would say the victim was dead. I'm not precisely saying that he's ineffective for not providing an expert who could say that the victim was dead at the time of the sexual contact. I'm saying that if that was his plan, he was ineffective for not providing someone who could say that. I'm saying – But if you can't ever find someone that would say that, how can you fault someone – I – Does that mean – How can you fault someone? I think I can fault someone for coming up with that plan and then not finding an expert to do it. Well, except that the backup problem here is there may have been no plan. In other words, the question is, in order to say that he did something wrong, you'd have to say there was something right he could have done. Could have possibly done and could possibly have succeeded. And to some degree, he did that with regard to the premeditated murder. But the question is, what could he have done or did do or you think he should have done that would have gotten through the felony murder? I mean, I agree with you that he made no coherent theory on the felony murder. The question is whether there's one he should have made. I think with regard to the premeditated murder, there was a lot of – there was significant evidence at trial that this was not a premeditated murder. I don't think Clark did anything to argue that to the jury. Let's say I disagree with that. But what about the felony murder? The felony murder, there were a number of jurors who did not – did not find Mr. Gallegos guilty of felony murder. Well, is that true or is it an overlap? In other words, when you have a split verdict like this, does that mean that the people who found premeditated murder didn't find felony murder or found premeditated murder and therefore didn't need to find felony murder? In this case, the way it appears to me what I believe happened is that some of the jurors found only felony murder. Some of the jurors found only premeditated murder. And there was no consensus by all of the jurors as to, you know, all of us can find felony and all of us can't find premeditated murder. I think the people who found premeditated murder could be understood as not having found felony murder, meaning that they didn't find felony. They found that the rape didn't happen. Exactly. Not that they didn't find that the rape didn't happen, but that they refused to find felony murder. They didn't also find felony murder. They only found premeditated. Well, how would you not find felony murder if you found that the rape happened? I don't know, Your Honor, but that's what the jury found. Well, it seems that the – you know, I don't know that we can go behind that into the minds of people, but felony murder is generally easier to find than premeditated murder. So I would say if I were going to be making the argument, I would say that the people that found premeditated murder probably also found the felony murder, but they upped in – they didn't buy that he was young, that he was intoxicated, that he had learning disabilities and all of that. So – but all they have to go forward to the penalty phase, there's got to be a first-degree murder conviction, right? Correct. So that's not a defective verdict that way. But anyway, you haven't answered my question at all in terms of the felon. What should he have done that he didn't do and or that was prejudicial with regard to the felony murder? I think with regard to the felony murder, what he should have done differently is to have – I don't think this is exactly the way you're thinking of it, but let me say it and see if it answers your question. I think what he did that was harmful with regard to this felony murder plan was to call Michael to testify in order to rebut Dr. Baldock's testimony about the time of death of the victim. And in so doing, he got a lot of harmful information out of Michael that was used at the sentencing phase. Well, Michael also testified at the sentencing phase, didn't he? Michael did testify at the sentencing phase. And you have this funny fact here, which is – not funny fact, but I mean you have this – because you have this Arizona system legal at the time that has the judge doing the sentencing, the connection between the guilt phase and the penalty phase is less clear than in other circumstances. When you have the same jury doing both. So, I mean, and that somewhat cuts in your direction because it means that a strategy that focuses the – because of the impact it might have on the jury in the penalty phase doesn't make sense because it's not a jury at the penalty phase. Exactly. And a strategy that focuses on – or a strategy that allows in a lot of very harmful detrimental information at the penalty phase that the judge then uses and specifically writes in his sentencing, information that came exclusively from Michael's testimony, that goes to our prejudice in this claim. Well, you have – Just to summarize what you're saying. Because I'm really trying to get to the bottom of this. So what you're essentially saying is maybe there was no coherent founding of a theory, but then he shouldn't have been making one because it ended up being bad in the penalty phase, not because it ended up being bad in the guilt phase. Correct. You know, when he gets to arguing his closing argument, he for the first time seems to be saying that we should be looking at the lesser crime, which was stated toward the end when he – I'm losing the spot. I'll come back to it when I find it. I think Judge Peller had a question. Well, the question that I had is, well, you have to deal with felony murder on some level because he's charged with it. You know, that's one of the theories that the prosecutors – and my understanding of the felony murder is that it also can be an attempt to commit the act. And the evidence that Mr. Clark had to overcome on that was that your client did make a confession and there are admissions that they went in there to fondle her and also that they went to get the baby oil before. And so even if you couldn't prove that – well, and it's basically undisputed that she was alive when they went in there. And it appears to be there's fairly strong evidence against your position that they admitted they went in there to fondle and they went to get the baby oil. So the felony murder can be found by the attempt to commit an act. It doesn't even have to be the completion, right? Yes, although isn't the – So she could have been – she could have been – let's say she was dead when he penetrated. Okay. Still, he could be convicted of the felony murder based on that it was an attempt. And we know she was alive when he and Smallwood went into the room, said they were going to fondle her, and got the baby oil, right? Okay. So what I'm saying is just the fact that he didn't have an expert that said, you know, could rebut that she was dead at some point, poor Mr. Clark had some difficult facts to overcome. He definitely had difficult facts to overcome. But with those difficult facts to overcome, he shouldn't have gone in with a plan to use Michael's testimony to rebut the undisputed facts from the medical examiner, to use a lay person's testimony to rebut those facts. But who's the – but you still have to have – 20 years later, we still don't – there's nowhere in the record any medical person that could rebut it. And maybe there isn't a medical person to rebut it. Okay, but if there isn't anyone to rebut it, how can someone be faulted for not putting that on if that person doesn't exist? In 20 years, no one has come up with that. But the fault lies in Mr. Clark putting on Mr. Gallegos, his own client, to rebut it and thereby eliciting damaging testimony, such as that Kendall moved, woke, turned, and looked at Michael and tried to breathe, that she flailed her arms, that she fought for her life. Okay, but this is what I'm not understanding now. Suppose you were right. That might lead to prejudice at the penalty phase, but it wouldn't lead to prejudice at the guilt phase. It wouldn't lead to prejudice at the guilt phase, but that phase. But that gets back to what I was saying about the jury being split. And we don't know why some of the jurors refused to find him guilty on premeditation and some of the jurors refused to find him guilty on felony murder. But that is what this jury did. Right, but wouldn't the best strategy in the world be not to get first-degree murder? Because then you never get to the penalty phase. So there are some risks involved, and that's what I'm just trying to – anyone that's tried cases knows you've got to – you're not always – 2020, you could say something didn't work, and I'm not going to do it again. But I think any capital defense lawyer – and I've seen – I've done capital cases. I've seen that the first thing you want to do is you don't want a first-degree murder because then you never get to the penalty phase. That would be great if you could not get a first-degree murder case. Okay, but so what you're saying is there's not a problem – you're saying that putting Michael on at that point to try to not get the first degree, yeah, maybe that was a good idea, but then it was a bad idea for the penalty phase. No, I don't think I've ever said it was a good idea to put Michael on to try to not get first degree. I don't think it was a reasonable trial strategy at all to put Michael on, a layperson, to refute Dr. Boldock's testimony that she was alive at the time of the murder. But he was also trying to refute the testimony – the premeditated first-degree murder by essentially saying he never intended to kill her, it was all an accident. And he seemed to have persuaded, you know, some chunk of the jury of that. Except that Saldate had already testified to the fact that Michael hadn't premeditated this murder. He believed him. He believed him when he said that, right? Correct. So that's not the same as the person saying, I didn't premeditate it. But the officer – it is compelling that – I have never seen a death penalty case where the two detectives have come to a defendant's aid in the way that they did here. Apparently, though, which, I mean, was amazing, really. But obviously, if the detectives said, I don't think he premeditated, I believe him, and a jury still doesn't, I don't know what could convince them. Which further goes to support my idea that what was Clark doing, putting Gallegos on the stand? He already had Saldate's testimony where Saldate said, Gallegos told me he didn't premeditate this, and I believe him that he didn't premeditate this. So how is he helping his case by putting his client – Could you explain to me how that was harmful to the conviction? It's harmful to the conviction because of what I was talking before about the split jury verdict. Okay. Explain it further. All I believe Clark could have done to not get a conviction was to try to defeat premeditation. He already had – Why was that not going to get him a conviction? That's where I hit a stone wall in this case. It wasn't not going to get him a conviction. It was going to get him a felony murder conviction. The jury would have hung on first degree because there were at least some members of the jury who didn't believe it was felony murder. Well, no. I don't think – I don't think you can infer that from the jury verdict because premeditation is a step higher than felony murder. And so you could believe felony murder. You could believe felony murder but not premeditation, but you could believe premeditation and still believe felony murder. I understand what you're saying, Your Honor, but that's not how this jury was extracted. Except there was a conviction on the rape or on the child abuse which involved a penetration. So what that meant was that the attempt to negate the felony didn't work. There was a unanimous jury on the felony. You're absolutely right that this jury convicted him of the felony, but some members of the jury refused to convict him on felony murder. It's not as though they said we all agree that this is felony murder and some of us don't agree that this is premeditated. They said some of us think this is premeditated and some of us don't. Was that available on the verdict form? It wasn't the verdict form, it's A, B, or C? The verdict form was... It wasn't available on the verdict form to say some of us think it's felony murder. Some of us think it's premeditated murder and all of us think it's felony murder. I don't know, Your Honor. When we get to this closing argument, I've now found the place where he says one of the instructions that you're going to receive is an instruction that deals with the crime of reckless manslaughter. Now, as far as I can tell, there's no place where he ever describes the various levels and what has to be proved for them. So he says, okay, he's been accused of premeditated murder, but finally, when you get to the closing argument for the first time, he says reckless manslaughter. And nowhere has he ever described these different levels or differences between felony murder, reckless manslaughter, premeditated. So he tells the jury to be fair, but I submit that how does he know what to be fair about? You're absolutely right. He never asks the jury to not convict his client of first-degree murder. He never explains to them what the differences in first-degree murder and the lesser-includeds are. And he does mention reckless manslaughter there, but if you read a little bit further in his closing argument, he never says, and so please only convict my client of reckless manslaughter. He doesn't. He doesn't suggest anything. And that's one of the facts that we point to that the State Court found that we believe is an unreasonable determination of the facts. The State Court said that Clark made a request for manslaughter in his closing argument, and the State Court also said that Clark pleaded with the jury for manslaughter. There's nothing in what he said in the closing that can be reasonably read as a plea for manslaughter. Well, he had to. Did the court correspond to give the manslaughter instructions, or were those submitted by the defense? Those were submitted by – it's a little bit unclear to me from reading the trial transcript who submitted which instructions, but I think it's fair to assume that Clark submitted those instructions. Well, there would be two ways it would happen. I mean, you wouldn't know that until after all the – I mean, the way that trials work is the court decides what the instructions are after the court's heard all of the evidence. And generally speaking, lesser-includeds are requested by the defendant. They're not requested by the prosecutor. But sometimes courts will give them if they feel that they have a sua sponte duty, if the facts merit stuff. But here – but you wouldn't – the only time you wouldn't give a sua sponte of a lesser-included offense is if a defense lawyer said for strategic reasons, I'm going all for nothing here. But so obviously Clark did something, made some sort of request here to get those instructions that the jury – for his client. But even if Clark requested the instructions go to the jury on the lesser-included, he needs to tell the jury what he wants them to do. He never makes the request to the jury that they convict of anything less than first degree murder. Well, first degree murder and sexual conduct with a minor. I still have the same problem, which is so what if the – if he doesn't negate the felony murder? And you seem to be saying he didn't have an obligation to negate the felony murder because there was no way to negate the felony murder. And then you lose. I mean, I keep going around in circles on this, and I don't – let me suggest maybe some theories in which you can tell me why he shouldn't have argued, which would have negated the felony murder. I mean, one would have been that he didn't – never did actually argue verbally this – she was dead theory. He never – he presented the facts on that, but it's – no lay person would actually come up with it, I don't think, just based on the instructions. And nobody ever explains to them why it makes any difference that she was alive or dead. Now, there could be a good reason. It's so grisly. But he never does say that. Does that matter? I think that definitely matters. It goes to deficient performance if you're going to present all of this – if you're going to proceed with a plan where you have your client testify to rebut expert testimony, but then you don't actually tell them what they're supposed to do with your client's testimony. I think it definitely matters. He still would have to deal with the intent, though. And she was alive. It's undisputed she was alive when they went in and they got the baby oil. So just proving that she's dead at some point later doesn't – it's not a total – it's not going to negate the felony murder. Although having the intent to fondle her and having the intent to have anal intercourse with her is – Also, the one piece of this record in which it does seem to me that there could have been prejudice was on the question of how drunk he was and whether it mattered. And I gather that the one place where that matters is with regard to an attempted rape. Correct. So if there was a problem with regard to an attempted rape, then there probably could have been prejudice because there was a pretty evenly split record on whether he was drunk enough to negate an intent to rape her, even if he – when he went in there to do whatever he thought he was doing. I don't know that I would agree that there was a pretty evenly split record on that, but – Split enough to be prejudicial, in other words, from your point of view. I think there was a lot of evidence that he was very intoxicated on the night of the crime. So if he can get to – if he could have gotten to the attempted rape – so if he had argued something like there was no actual rape because she was dead and there was no attempted rape because he was really drunk, the problem would be whether he can get over the first hump on prejudice because he could probably get airflow over the second. I don't know about the prejudice on the first one, though, given the state of the record. And the prejudice of the first one, your first hump was – Was actual rape. Was actual rape. So – I mean, given the fact that there was this – and that would have been a reason for putting a rake or something because you would have to get over that hump. And the – if they couldn't come up with any competing expert evidence, they want to come up with some competing evidence. Well, I don't know that they couldn't come up with any competing expert evidence. Well, but you don't have any – I mean, you do have a big problem on that, which is you don't have it now. You're correct that we don't have it now. But – How would you have tried the case? I mean, given what the evidence that Mr. Clark faced, how would you have tried the case? I would have focused on premeditation and I would have focused on sentencing. I think our big prejudice here is sentencing. Okay, but if you only focused on premeditation, how can you ignore felony murder if they're arguing it? You don't have an entire choice. You know, if the prosecutor has two theories on how you get to first-degree murder, if you – you know, then you'd be making – if you completely focus – if you focus on premeditation when felony murder is the easier one probably to prove for the prosecutor, how would that be – how would that not be an effective approach? I guess I'm just – you know, I kind of want to know what – you know, if he did it wrong, how would someone else do it with the pretty much amount of evidence that the poor guy had? I think someone else could have saved Michael's life by not painting a picture of Michael that was far worse than the picture the prosecution could have painted. Well, I guess with the things that you're saying, what – if Michael's picture is bad, then, you know, lawyers aren't magicians. They – you know, but they – sometimes, you know, they can polish things up a bit. But, you know, I think Michael's best points were he was young, he had learning disabilities, and you just hope that someone feels sorry for that because the evidence was pretty bad against him. The evidence was bad, but Clark overshadowed all of the mitigating evidence that could have been presented by putting Michael up on the stand and having him repeat the horrible facts of the crime. But since that – that might be an important argument if the jury had been sentencing. But it wasn't. And so then – I mean, then you have to assume that the judge was going to be influenced by something that was really just repetition because he had already said pretty – is there anything that Michael said in the stand that wasn't otherwise said anyway? Absolutely. And it's things – there are things that the judge wrote. Like what? Things like that she struggled, flailed her arms, tried to push herself up off the bed, looked at Michael as he had his hand over her nose, that she was fighting for her life, that he considered – that she considered Michael her uncle, that she never had a chance. That was specifically a question Clark asked Michael. He said, would it be fair to say that she never had a chance when you walked into her room? And Michael said yes. But why wasn't it reasonable that since he had convinced the detectives, which I've never seen detectives, you know, sort of beg for someone's life and also say, I don't think – I mean, really participate actively in your defense. That's as good as it gets. If Michael convinced the detectives and he had told the detectives all of that grisly, why wasn't it reasonable for an attorney to think, well, if you can convince hardened detectives who are prosecuting you for this crime, that other people might on some level relate to the same things that the detectives related to? It wasn't reasonable if Clark was going to put Michael on the stand and treat him the way Clark treated him when he was examining him. Clark said stuff like, did you ever do anything to try to help this little girl? Did you go get her mom? When she was struggling, did you go get your brother? Those were unreasonable questions. He was treating him with contempt while he was on the stand. I mean, of course Michael hadn't gone to get her help. He was in her room assaulting her. The way Clark treated Michael while he was testifying made it so that Michael could never convince the jury in the way that he had convinced the two detectives. So you're not saying, though, if Michael had wanted to testify, obviously Clark couldn't have stopped him? That's just not this case. No, it's not. But if he had wanted to, you can't stop your client from testifying if they want to, right? Right. Okay. You wanted to save some time. Oh, you're right. Thank you. Thank you. Good morning, Mary. Pleased to court. My name is John Anderson representing the State of Arizona. In this matter, hopefully I can answer your questions about the record and the arguments in this case. The defense attorney here had a very difficult job. The state could prove first-degree murder either by premeditated murder or by felony murder. And with regard to the felony murder, the elements of felony murder are sexual murder committed in the course of sexual conduct with a minor. Sexual conduct with a minor requires that the victim be under 15, which she clearly was. There was sexual conduct with a minor. He admitted to sodomizing her for 15 to 20 minutes. Can it be an attempt, though? Yes. So it's not. Yes, it could also be an attempt. But, I mean, as grisly as it is, the death would have been a defense if she were dead. Well, he thought it might be a defense. And it's called the technical defense. And the reason he didn't argue it to the jury is because it's a technical legal defense. And he made that in his Rule 20 motion to the judge. And he raised that argument on appeal. It appears on the Supreme Court. But I don't understand. I mean, he'd have to argue it to the jury because otherwise there would never have been a finding as to whether she was alive or dead. And that seems to me what he didn't do here. He set the issue up, but he never argued to the jury why it mattered. Well, he did not. But I think there's the reason for that. As I said, it's a technical defense, arguing to the jury that my client is not guilty of felony murder because he only sodomized her for 15 to 20 minutes. Well, it's not an attractive argument. But what he did was he focused on the lesser included to premeditated murder, which is reckless manslaughter. Well, first of all, he only mentioned murder. But that one didn't negate the conviction. Well, Your Honor, it doesn't have to negate the conviction. If he could have got the jury to buy it on reckless manslaughter, it could have just come back to the murder case. Did he use the words reckless manslaughter or did he just? Yes, he did. I'm sorry. I don't understand that. I mean, without negating the felony murder, how would he have gotten them to agree on reckless manslaughter? Because the jury would have just returned a verdict. The jury doesn't have to return a verdict. They just would have been totally confused and not realized it. Well, not totally confused, but they would have. There was a verdict form for reckless manslaughter. He said this is reckless manslaughter. They return. They don't have to go through and find felony murder premeditated murder. They can return any verdict they want. I thought that they have a sheet where they have to fill that out. Well, there is a first-degree murder verdict form, but there's also one for reckless manslaughter. If they had gotten back and said, you know, he didn't really intend to do this. This isn't premeditated. Sign the reckless manslaughter verdict. Bring it back to the court. But Judge Fletcher has a question. He mentions reckless manslaughter in the closing argument, but he never tells the jury what the elements of that are. They have no understanding of how that fits into the monopoly of first-degree and then felony murder. The jury, in the opening argument, gives us no clue that there's anything other than finding guilty of murder. No explanation that, to be fair, they could find him guilty of something less than premeditated murder. Never once. So the jury has no context into which they can fit the evidence. Well, I argue there's two questions there. Does the jury know about how the murder counts relate? And the answer is clearly yes, because the court gave extensive instructions, written instructions. They can look at the instructions, the instructions. But this is after they've heard all of the evidence. Yes, and before they deliver their verdict. So as they were listening to the evidence, they don't have any capacity to think through what this might be, whether it could possibly be manslaughter, whether it was felony murder. They just got the evidence, and it isn't until the instructional phase that they have any clue that there are these various degrees, and you need to look at the evidence and fit it into the slots. We're talking here about incompetence of counsel, and it seems to me that this was a case where the jury was not able to find out what the jury was talking about and what he wants the jurors to find. Well, I respectfully disagree, Your Honor. They refer to this as opening argument. It's not opening argument. It's opening statement. You're not supposed to make arguments about what's going on. No, but I think that's why. Aren't you talking about the closing argument? Opening and closing. Well, the opening you couldn't talk about manslaughter, because you don't know whether you're going to get the instruction, right? Exactly, Your Honor. But closing you could. You could tell them. You could say, hey, this is why on these facts it's a closing, not why it's a manslaughter. But this is the real problem. I know I'm fixated here, but you couldn't make a coherent argument in that regard unless you dealt with the felony murder. In other words, it seems to me what he didn't do here was deal with the felony murder. There was an explanation for why he wouldn't have dealt. And he did mention the reckless manslaughter, and he did set up the elements of it, and he could have said, well, I can't argue any more about that, because if I do, I'm going to walk right into the felony murder, because I'll be able to explain why it shouldn't be reckless manslaughter, but I won't be able to explain why it shouldn't be felony murder. But why didn't he have to explain why it couldn't be felony murder? Is there a coherent theory as to why it wasn't felony murder, and why didn't he make  But that's part of the problem, Your Honor, is there is no way to say that it's not felony murder, because as the Arizona Supreme Court said on the first appeal, this is felony murder. It's sexual conduct with a minor committed in that court. Well, whether alive or dead. Whether the child was alive or dead. Right. Well, but it isn't. They ended up saying that in the end. There was no law like that at the time. And frankly, it's quite counterintuitive in the sense that the statute does not say that. Well, no, it's the only argument he had. It was a creative and novel argument. But what's his only defense? His only defense is to say it's sexual conduct with a person under the age of 15. He came up with, I think, a fairly creative argument. But he didn't make the argument. But the problem is he never made the argument. He never made the argument. It was a technical legal argument that he made to the court. How could he make it to the court without the underlying – I don't see how he – it's technical, but it's not legal. It depends on a fact. Yes, it is, Your Honor. It's legal. Well, it's, of course, requires some facts, but it's legal. Exactly. So how could the judge have decided he couldn't have? Well, he could, yes. He could have decided that, yes, she wasn't – there's no evidence that she was a person or that she was alive. I don't understand why it couldn't have been made to the jury. Tell me why it couldn't have been made to the jury. Well, the question under Yarbrough v. Gentry is whether counsel is required to make all arguments to the jury. And the answer is no. And as a – Well, but he's required – if there is an argument versus no – I mean, in the end, he made no argument that negated first-degree murder, because even if they brought the reckless manslaughter as to the premeditated part of it, he wasn't negating felony murder. No, Your Honor. That's not what happens here. That's not what happens in Arizona. There are alternative theories. You can find both. You can find neither. You can find lessors on premeditated murder. There was no requirement that they go through premeditated murder and find that. There was no requirement that they go through felony murder and find that. That's shown by the fact that they delivered this mixed verdict. They could have come back and – Well, can we tell anything from the verdict? Appellant's counsel or Petitioner's counsel was saying that we could tell certain things from the verdict. Can we tell anything from the verdict about the premeditated people? Can we say that they didn't find felony murder, or what can we say from that? We can really say nothing. All we can say is that there was an unanimous jury on first-degree murder, some finding premeditation and some finding felony in two hours, mind you. So some said, I think it's premeditated murder. Some said, I think it's felony murder. After two hours, they said, well, we don't have to agree on that, so we'll just go back in. They didn't deliberate further. If they had been forced, if the judges said, well, you have to go back or you need to tell me, are you all unanimous on felony murder or are you unanimous on premeditated murder, they could have well gone back and found. And how could they not find felony murder under the facts of this case? I think that's the bottom line. This is a clear case and really an indefensible case. Well, that's what I just said. And that's why it seems to me that the failure to make any argument negating felony murder, even though he had directed a large part of his – the only explanation he had for his strategy and the only explanation for his strategy is to negate felony murder, right? Well, partly to – I mean, at least insofar as he was spending time trying to prove his child was dead, that was to negate felony murder. There's no possible prejudice because there is nothing that he could have argued in closing argument that would have have not persuaded the jury not to find felony murder. I mean, this is so clearly a felony murder case. Why couldn't he have argued as follows? First of all, as Michael told you, the child was dead. If the child was not dead, he at least thought she was dead, so it wasn't knowing. Moreover, as to attempted felony murder, he – there really wasn't an attempt because, A, they were so drunk that they couldn't have formed the intent, and, B, they actually didn't form the intent. They didn't really know what they were doing. They were going in there to, quote, fondle her, and nothing that they did before she was dead was inconsistent with the notion that they – that's what they would have stopped at had she hadn't died. Now, why couldn't he have argued that? You know, counsel can argue a lot of things. Well, but he argued nothing. And if there is something and he argues nothing, why isn't that an effect? But the question is whether his overall argument is reasonable. If it's Henry Hubbard v. Gentry, wasn't it reasonable for him to focus on the premeditated murder? But he didn't, you see. I mean, one thing that your opponent points out is that he spent his reason – the only thing that he – at least a lot of what he seemed to be doing was trying to negate – prove that this child was dead before she was raped, which is a horrible thing to be proving. I believe that's not the record, Your Honor. There's a very tiny – very tiny part of the record that deals whether – with her rectum was dilated. I mean, Bolduck's testimony – Well, there's that. There's also a good deal of the explanation for why to put on Galeagos, despite the other sides of doing it. No, no, that's not true, Your Honor. Counsel testified exactly to PCR hearing why he put on Galeagos. He wanted to humanize him in front of the jury. He wanted to explain his drug and alcohol history. So there are many, many reasons to put Galeagos to testify. Counsel, as you read his questioning of Galeagos, it was dismissive at best, trying to make him look like a monster. It was just incredible the way he conducted that. I disagree with that, Your Honor. He was being tough with him. Galeagos said he didn't – counsel testified to PCR hearing that Galeagos didn't really want to testify, but he needed him to testify. They talked about it. Before opening statement, he persuaded him to testify. Sometimes he had to be tough with him, but he needed to get Galeagos in front of the jury to see that he was a big, immature kid, that he came from a good family, and that he didn't mean to kill her. And that's what the overall – this conduct is descriptible, Your Honor. Well, he could have asked questions that would support that, but that's not what he did. He asked all sorts of questions to not humanize his client, but to dehumanize his client. That's not correct, Your Honor. When he put on Galeagos, if I may speak – when he put on Galeagos, he started out with his background. He started out about his special learning disability. He started out about his alcoholism, his history of alcoholism. And, sure, he had to go over the facts of the crime, but if he hadn't brought out his statements to Saldate, the prosecutor under redirect would have brought those statements out. It would have said – On cross, you mean. I'm sorry, on cross, yes. So – but the bottom line is, as the judge found at the PCR, any mistake by counsel in the strategy would not have affected the verdict because of the overwhelming evidence. Well, what about the notion that it would have affected the penalty phase? That's not true, Your Honor. Because the judge found that any – either one of the aggravating circumstances independently would have outweighed the mitigation. So you're saying that the heinous one didn't matter because of the 15-year-old, because of the – Right. That's the specific finding by the trial court, that it would have found the death penalty based on either aggravator, and the one aggravator is incontestable. I don't know if the Court had any – So the bottom line in your response to my concerns about the felony murder is that he didn't need to have a theory about – is it that there isn't one? There is no theory he could have had? Or even if he had one, he had no obligation to make? Well, actually, it's two parts, Your Honor. One is that he had no obligation to make that to the jury. He did have a defense that he made to the court in moving for a directed verdict, and that he made on the appeal to the Arizona Supreme Court. And he made what? He made that argument to the Arizona – it preserved the legal – I do not understand that argument. Okay. Okay. I mean, because it depends on a fact, so somebody has to find the fact. Well, but it also depends – well, there's two parts to the she was dead argument. One is was she actually dead. The second was whether Gallegos believed he was dead – I mean, she was dead. And that – you can see that in the Arizona Supreme Court. I don't know if they talk about both aspects of that. Putting Gallegos on the – But even the part about was she was actually dead, which everybody agrees would have been a defense, he never put that to the jury. Well, he doesn't have to, because if you – if you went on appeal, I mean, it's just as good as going to the jury. It doesn't matter. But how can you win an appeal when you don't have an underlying finding as to whether she was alive or dead? Or you don't have – you don't have one of your – I mean, as it turned out, he has a conviction on the rape or on the child abuse, which is a – it's legally a conviction saying that she was alive. But nobody ever told the jury that. Nobody ever told the jury, and it's completely counterintuitive, and nobody would think it, that anything turned on this case, even though they heard a lot of stuff about it, on whether she was alive or dead. But, Your Honor, it's just as effective to argue that – to argue to the judge and have the felony murder count dismissed to the judge. No, it isn't, because he's incapable of dismissing it. If there is evidence to support the fact that she was alive, there was evidence to support the fact that she was alive. So somebody has to find the fact. That's the defense he made, and he – it's true. He tries to develop the facts to support the defense. I know. The facts aren't there. You're just losing me on this. Okay. The facts aren't there. I'm sorry, Your Honor. Hopefully all three of us agree with that. I mean, you're losing me because you could not make the legal argument without a predicate fact. Sure. And that's absolutely true, Your Honor. And he attempted to develop that through Bolduc. He interviewed Bolduc. But he didn't put it to the jury who was the fact finder. He doesn't have to put it to the jury. He had a legal argument to present to the trial court, and it's as effective to have the trial court dismiss the felony murder count. I mean, it's even more effective because it's done than it is to submit it to the jury. Certainly, the trial judge's reaction to that would have been, I can't make that finding because I can't find whether she was alive or dead. You have to ask the jury that. Well, I mean, that – but I guess it gets down to there really is no defense to felony murder in this case. The attorney did the best he could. He tried to develop it. I'm sorry. You just said there is a defense. The defense would have been the child was dead, therefore there wasn't a rape. Well, no. I'm sorry. I understand. Then you get to the attempted murder. As just – as Callahan has pointed out, it's still attempted. Felony murder is still attempted. But that's debatable, too. No, not really. Well, the Arizona Supreme Court said that this was sexual conduct with minor. It didn't matter. So that's what you mean. You end up saying that the California – because the Arizona Supreme Court case said that isn't a theory. Right. And it rejected that. But it was a novel argument. It hadn't been presented before. You have to give Clark credit for coming up with a novel defense. And for making the argument. Pardon me? He never made the argument. He made it to the trial court and he made it to the Arizona Supreme Court. And that's just as good as making it to a jury. And he didn't have to make it to the jury because if they would have returned a verdict for reckless manslaughter, he wouldn't have been death eligible. And as Judge Hotham points out, you know, it wouldn't have made a difference. So I don't know if the Court would like me to address that. Well, nobody has addressed the penalty phase at all. I don't know if you want to do that or not. The Court doesn't have any questions. Well, I guess my point on that would be you have to look at whether what the state trial court did in the PCR was reasonable in denying a Strickland claim. He presented no evidence at all in the Rule 32 hearing about additional mitigation that should have been presented. So the Court could only have ruled that he didn't prove a Strickland claim of ineffective assistance at sentencing because there was no additional evidence before the Court at that time. And you're looking to the reasonableness of the trial court on that. And given no additional evidence of mitigation, zero, nada, the Court could only reject the effect. It's really kind of a bait-and-switch. I mean, you present a shell claim, a legal argument, with no facts to support it. He was given an evidentiary hearing and wasn't denied any experts at all. And then by the time he gets to federal court, then there's all sorts of declarations and so forth. But what you have to look at is whether the trial court was reasonable in denying the Strickland claim. Okay. Thank you very much. Thank you, Your Honor. Counsel. We'll give it two minutes. Thank you. I just have two things I wanted to address in rebuttal. First, we spent a lot of time talking about prejudice on the claim 2. I wanted to make sure you knew that we were stressing that this is a chronic claim. We think that this claim should be addressed under United States v. Chronic because Clark completely failed to subject the prosecution's claim to the crucible of meaningful adversarial testing. And what Judge Fletcher was pointing out earlier about when Clark called Gallegos to the stand, he wasn't doing it to humanize Gallegos. He did it to vilify him, to draw out additional harmful testimony, to express contempt for him. He completely abandoned his client at trial. In the opening, in the testimony, the direct examination of Gallegos in the closing and in the way he prepared for his examination of Dr. Baldock. I also wanted to refer you to ER 939 when we were talking about the split verdict. This goes back to the prejudice question, which I know I just said doesn't matter under chronic, but because it matters to you, I want to tell you about it. This is where the jury checks the boxes for the verdict they're finding. There's a box for unanimous first-degree premeditated murder, one for unanimous first-degree felony murder, and then the box, which are both unchecked, and then the box they checked is unanimous as to first-degree murder, but split as to whether it was premeditated murder or felony murder. So I didn't know if that cleared that up for you at all. Kagan. Well, it clears it up, it seems to me, against you in the sense that there's no box for unanimous as to felony murder, but split as to premeditated murder. And there is no box for reckless manslaughter. Well, there is no box for reckless manslaughter, but that would be a different case, right? That's a different verdict form. A different form. I guess, but back to your question, if they had – maybe I'm misunderstanding, but my impression is if they – they could have checked both of the first two boxes. If they – But wouldn't it have been unanimous? I mean, if it were unanimous – if it were unanimous as to felony manslaughter, but split as to premeditated murder, what would they have checked? If it were unanimous as to felony murder, but split as to premeditated murder, they would have checked unanimous as to felony murder. And then what? And that's all they would have needed to check. They would not have checked unanimous as to first-degree murder, but split as to whether it was premeditated murder or felony murder. Well, we don't exactly – we don't exactly know, no. Yeah, it's confusing. Okay, thank you very much for your argument. Thank both of you for your argument in a really difficult case. And the case of Gallegos versus Schwerer, of course.
judges: Fletcher B. , Berzon, Callahan